IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
MINNEAPOLIS DIVISION

| | |
|---|---|
| **TONY THURBER**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>**ARBOR LODGINGS PARTNERS LLC,**<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Tony Thurber, on behalf of himself and all others similarly situated, files this Class Action Complaint against Arbor Lodgings Partners LLC ("Arbor" or "Defendant"). Plaintiff alleges, based on personal knowledge as to Defendant's actions and upon information and belief as to all other matters, as follows:

**I. NATURE OF THE CASE**

1. Plaintiff brings this consumer class action against Defendant for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*.

2. Defendant is a hotel management corporation engaged in hiring employees across the United States, which systematically violates the basic protections afforded to consumers under the FCRA

3. Plaintiff brings nationwide class claims against Convergent for knowingly and intentionally procuring consumer background reports of applicants for employment purposes (a) without providing a clear, standalone disclosure that a consumer report may be obtained for employment purposes in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), and (b) without written authorization from the consumer in violation of 15 U.S.C. § 1681b(b)(2)(A)(ii).

4. Defendant's practices were repeated and systematic. Plaintiff therefore asserts claims on behalf of himself and the proposed class of similarly situated individuals for statutory damages, punitive damages, costs and reasonable attorneys' fees, and injunctive relief.

## II. PARTIES

5. Plaintiff Tony Thurber is a "consumer" as protected and governed by the FCRA and resides in Minneapolis, Minnesota.

6. Defendant Arbor Lodgings Partners LLC is an Illinois limited liability corporation and maintains its principal offices at 566 W. Lake St, Suite 320, Chicago, Illinois 60661.

## III. JURISDICTION AND VENUE

7. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

8. Venue is proper in this Court because Plaintiff resides in this district and was harmed in this district. Defendant further regularly attempts to collects debts in this district.

## IV. FACTUAL ALLEGATIONS

9. In September of 2021, Plaintiff sought employment with Defendant Arbor.

10. Defendant is a hotel management company, operating in numerous hotels across the United States.

11. Defendant requires employment applicants to complete their applications using their Arbor Lodging online portal.

12. When creating an account, Defendant provides a short "Consent Policy", which provides that:

> "[b]y submitting your information, you acknowledge that all representations made by you are true and correct to the best of your knowledge and belief, and you have not knowingly omitted any relevant information. You understand that any inaccurate information may

disqualify you from employment before or after you are hired. By submitting your information, you acknowledge that you have read and understood the foregoing and consent to the uses of your information as set out above."

13. Nowhere in Defendant's consent disclosure does it mention that as part of the application process, Defendant will procure applicant's consumer reports to determine employment eligibility.

14. Additionally, when applying for an employment position through Defendant's online portal, there is no separate disclosure informing an applicant that a consumer report will be procured and used in assessing employment eligibility, nor is there any component of the application by which an applicant provides written consent for the procurement of such reports.

15. Despite this, as part of its ordinary and regular business practices, Arbor procures and uses consumer reports to determine the eligibility of applicants for employment for its own benefit.

16. On or about September 28, 2021, Plaintiff received an offer letter from Defendant which included the section headings: Your Position, Initial Compensation, Term of Employment, a term of acceptance of the conditional offer, and Benefits. Each of these sections outlined various details of Plaintiff's employment. Buried in one line of the letter under the "Term of Employment" header was the statement: "I would like you to start work on 9/28/2021, after the acceptance of this offer of employment, and on completion of a background check." This is the only reference to a background check or consumer report given to Plaintiff.

17. This document included excessive extraneous information not connected to the procurement of the background report. Accordingly, Plaintiff only understood that he was accepting an offer of employment. He did not understand that he may be unknowingly authorizing

the procurement of a consumer background check, nor would he have if the document had been clear.

18. Plaintiff began employment immediately and continued through the following weeks, until on or about October 29, 2021, when Plaintiff was abruptly notified that he was being terminated.

19. To Plaintiff's complete surprise and dismay, Defendant's online application portal provided a "Termination Information" document, which listed the termination reason as "mis-statement on app", due to the results of his background check.

20. This notice through Defendant's online portal was followed by an "adverse action notice" provided to Plaintiff, dated November 5, 2021, which illustrated that his employment was being terminated due to the results of a background check.

21. Only at this time did Plaintiff discover, to his surprise, that a consumer report had been generated in connection with his application for employment with Defendant.

22. Defendant failed to provide Plaintiff with a document consisting solely of a disclosure that a background check will be procured for employment purposes. The sole document provided that referenced any background check was Defendant's Offer Letter, which was provided *after* Plaintiff had applied for the position. Moreover, none of the language in the offer letter indicates that Plaintiff is providing written consent for the procurement of a consumer background report.

23. Defendant's Offer Letter violates the plain language of the FCRA because it includes extraneous information and therefore not a document consisting 'solely' of the required disclosure that a background report will be procured.

24. Specifically, the Offer Letter contains at least the following extraneous items of information:

   a. Information regarding the applicant's role, supervisor, and duties;

   b. Information regarding the applicant's rate and frequency of compensation;

   c. Information regarding performance and salary reviews of employees;

   d. Information regarding start dates and the at-will nature of employment

   e. Information regarding various benefits such as paid vacation, 401k, medical benefits, and benefits access through a virtual portal.

25. In fact, the sole reference to a background check is only a portion of a sentence relating to Plaintiff's start date.

26. Defendant's online employment application fails to provide any disclosure whatsoever that a background check will be procured.

27. Additionally, neither the Offer Letter nor the online employment application affords Plaintiff any opportunity to provide written consent for the procurement of a consumer background report to assess eligibility for employment.

28. By burying any arguable disclosure regarding the procurement of consumer background reports within half of a sentence in an Offer Letter, Plaintiff was misled into believing he was simply accepting a job position, and not that he would have his private information disseminated.

29. As a result, Plaintiff was prevented from making an informed decision as to whether to permit Defendant to obtain his consumer report.

30. Defendant's conduct was knowing and reckless.

31. Defendant knowingly and recklessly disregarded the plain meaning of 15 U.S.C. § 1681b(b)(2)(A), as well as guidance from the Federal Trade Commission and numerous court decisions stating that 1) a stand-alone disclosure is required under § 1681b(b)(2)(A) before procuring a consumer report, 2) the inclusion of extraneous information on the disclosure required under § 1681b(b)(2)(A) is a violation of the FCRA, and 3) the failure to obtain written consent under § 1681(b)(2)(A) before procuring a consumer's report is a violation of the FCRA.

32. Defendant knew it had an obligation to provide a stand-alone disclosure and obtain written consent before procuring a consumer report, but chose to place its own interests ahead of the rights of consumers.

33. Upon information and belief, in accordance with their standard procedures, the consumer reporting agencies from which Defendant acquired consumer reports during the two years preceding the filing of this Complaint required Defendant to certify that it would comply with the disclosure and consent provisions of § 1681(b)(2)(A). See 15 U.S.C. § 1681b(b)(1).

34. Upon information and belief, before procuring Plaintiff's report, Defendant did, in fact, certify to consumer reporting agencies it used that it would comply with the requirements of § 1681(b)(2)(A). Yet, Defendant failed to do so.

35. Defendant did not procure Plaintiff's report in connection with any investigation of suspected misconduct relating to employment, or compliance with federal, state, or local laws and regulations, the rules of a self-regulatory organization, or any preexisting written policies of the employer.

36. Upon information and belief, Defendant repeatedly procured background reports on numerous other applicants and employees without adequate disclosure and consent.

37. By systematically failing to provide adequate disclosures and failing to obtain written consumer consent from Plaintiff and other current or former employees and applicants, Defendant knowingly and willfully violated 15 U.S.C. § 1681b(b)(2)(A).

38. As a result of Defendant's conduct, the consumer Class members such as Plaintiff have suffered concrete injuries. The consumer Class members were confused and misled into believing they were simply accepting an offer of employment, and not that they were unknowingly agreeing to share the personal details of their consumer background reports with Defendant. As a result, for example, Plaintiff was terminated from his employment.

39. In addition to having their privacy invaded, consumer Class members have had their personal identifying information unnecessarily disseminated to the Defendant without their consent. Additionally, Defendant has subjected consumer Class members to an increased risk of identity theft and/or a data breach, resulting in consequential anxiety and emotional distress.

40. These injuries are particularized and concrete, but difficult to quantify, rendering the recovery of class statutory damages ideal and appropriate.

41. Defendant, at all times relevant hereto, was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

## V. CLASS ACTION ALLEGATIONS

42. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action for himself and on behalf of the following Class:

> **All natural persons on whom Defendant procured a background report without written authorization in the two-year period preceding the filing of this Complaint.**

43. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

44. Specifically excluded from the Class are: (a) all federal court judges who preside over this case and their spouses; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to Convergent releases of all their claims; and (d) Defendant's employees, officers, directors, agents, and representatives and their family members.

45. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. At this time, Plaintiff does not know the exact size of the Class. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class members impracticable. The names and addresses of the Class members are identifiable through documents maintained by Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

46. **Commonality.** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members, including without limitation:

   a. Whether Defendant provides stand-alone disclosures for the procurement of consumer reports as required by the FCRA;

   b. Whether Defendant's Offer Letter violated the FCRA's stand-alone disclosure requirement;

   c. Whether Defendant obtained written consent before procuring Plaintiff's and the Class members' consumer reports;

    d. Whether Defendant's conduct was willful under the FCRA;

    e. The proper measure of damages for Defendant's violations.

47. **Typicality**. Plaintiff's claims are typical of the claims of each Class member. Plaintiff has the same claims for statutory and punitive damages that he seeks for absent class members.

48. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's counsel have prosecuted complex consumer class actions across the country.

49. **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

50. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## VI. CAUSES OF ACTION

### COUNT I
### 15 U.S.C. § 1681b(a)

51. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

52. Defendant Arbor is a "person" as defined by sections 1681a(b) of the FCRA.

53. Plaintiff is a "consumer" as defined by section 1681a(c) of the FCRA.

54. The above-mentioned report is a "consumer report" as defined by section 1681a(d) of the FCRA.

55. Section 1681b(b)(2) of the FCRA provides as follows:

> [A] person may not procure a consumer report, or cause a consumer report to be procured for employment purposes with respect to any consumer, unless –
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

56.     Defendant violated the FCRA by procuring consumer reports on Plaintiff and class members without making the stand-alone disclosure required by the FCRA and without obtaining written consent. See 15 U.S.C. § 1681b(b)(2)(A)(i), (ii).

57.     Defendant acted willfully and in knowing or reckless disregard of its obligations and the rights of Plaintiff and the other class members. Defendant's willful conduct is reflected by, among other things, the fact that it violated a clear statutory mandate set forth in 15 U.S.C. § 1681b(b)(2)(A)(i) and § 1681b(b)(2)(A)(ii), and that, upon information and belief, Defendant certified to its consumer report provider that it would comply with 15 U.S.C. § 1681b(b)(2) but failed to do so. Further:

   a. The stand-alone disclosure and consent provisions were enacted in 1996 and have been in force for nearly 3 decades;

   b. Defendant's conduct is inconsistent with the FTC's longstanding regulatory guidance, judicial interpretation, and the plain language of the statute;

   c. Defendant repeatedly and routinely uses the same unlawful documents it provided to Plaintiff with all of its employees and applicants on whom it procured consumer reports;

   d. Despite the pellucid statutory text and there being a depth of guidance, Defendant systematically procured consumer reports without first obtaining consent and disclosing in clear and conspicuous fashion, in writing to the consumer in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

  e. By adopting such a policy, Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

58. Pursuant to section 1681n and 1681o of the FCRA, Plaintiff and the Class are entitled to statutory damages, punitive damages, attorneys' fees and costs for each and every one of these violations.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for relief as follows:

A. That an order be entered certifying the proposed Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his counsel to represent the Classes;

B. That judgment be entered in favor of the Class against Defendant for statutory damages and punitive damages for violation of 15 U.S.C. § 1681b(b), pursuant to 15 U.S.C. §§ 1681n and 1681o;

C. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

D. That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

## VIII. TRIAL BY JURY

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

Dated: January 25, 2023

               s/ Ryan D. Peterson
              Ryan D. Peterson (#0389607)
              6600 France Avenue
              Suite 602
              Edina, MN 55436

(612) 367-6568
ryan@peterson.legal

Joseph Kanee, Esq.
*Pro Hac Vice forthcoming*
MARCUS & ZELMAN, LLC
701 Brickell Avenue, Suite 1550
Miami, FL 33131
(786) 369-1122 telephone
(732) 298-6256 facsimile
joseph@marcuszelman.com
*Attorney for Plaintiff*